IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| J&J, LLC d/b/a<br>SERVICE MASTER BY AVERILL, | 2014 JUN 27 P 5: 01 |
| Plaintiff, | DEBRA P. HACKETT, CLK<br>U.S. DISTRICT COURT<br>MIDDLE DISTRICT ALA |
| vs. | * CASE NO.: 2:14cv-638 |
| | * |
| EXPERIAN INFORMATION<br>SOLUTIONS, INC., | *   JURY TRIAL REQUESTED<br>* |
| | * |
| Defendant. | * |

## COMPLAINT

## THE PARTIES

1. Plaintiff J&J, LLC d/b/a Service Master by Averill (J&J) is an Alabama corporation.

2. Defendant Experian Information Solutions, Inc., ("Experian") is a corporation, duly formed and existing under the laws of the state of Ohio, with its principal place of business in the state of California. Experian is registered with the Secretary of State of Alabama and conducts business in this judicial district.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this case pursuant to 28 USC § 1331; 28 USC §1332; 15 USC §168 1 (p) and 1692k(d). The amount in controversy exceeds $75,000.

4. The Court has personal jurisdiction over the Defendant and venue is proper under the Fair Credit Reporting Act, 15 USC § 1681 *et seq.* ("FCRA"), in connection with purported but incorrect debts appearing on Plaintiff J&J's consumer reports and the Defendant's refusal to remove or correct inaccuracies regarding them, despite written correspondence specifying the

1

inaccuracies and providing information that would facilitate a reasonable investigation of the matter.

## STATEMENT OF THE FACTS

- **J&J's Business**

5.  J&J is one of over 4,500 ServiceMaster franchises around the world.

6.  J&J's primary business is the cleaning and restoring of buildings after a disaster.

7.  One of J&J's larger clients is Alacrity Services ("Alacrity"). Alacrity oversees a national network of independent, credentialed contractors who are assigned to perform repairs on insurance claims.

8.  At the time of the incidents made part of this Complaint, J&J was the primary mitigation contractor providing cleaning and restoration services for Alacrity in central Alabama as an alacrity vendor.

9.  To work as a contractor for Alacrity, Alacrity requires that all contractors maintain a minimum credit rating. This rating is derived from information provided to it by Experian.

10. If a contractor has a good credit rating, it is designated "green light" status and the contractor is able to accept new business.

11. If a contractor has a credit rating at the lower spectrum of what Alacrity considers acceptable, it is designated "yellow light" status. Under "yellow light" status, the contractor can continue to do business but is given a limited amount of time to improve their credit rating.

12. If a contractor's credit rating drops below Alacrity's minimum standards, it is placed on "red light" status and cannot do work for Alacrity.

- **Experian**

13. Experian is a Consumer Reporting Agency as is defined by the Fair Credit Reporting Act, 15 USC § 1681 *et seq.* ("FCRA").

14. Experian is engaged in the business of reporting credit worthiness, credit standing, credit capacity, character and general reputation of consumers, and it routinely and regularly reports information regarding businesses', including Plaintiff's, creditworthiness and credit experience.

15. As described on their website,

> Experian® is a global leader in providing information, analytical tools and marketing services to organizations and consumers to help manage the risk and reward of commercial and financial decisions. Using our comprehensive understanding of individuals, markets and economies, we help organizations find, develop and manage customer relationships to make their businesses more profitable.
>
> Experian promotes greater financial health and opportunity among consumers by enabling them to understand, manage and protect their personal information, helping them control financial aspects of key life events, and make the most advantageous financial and purchasing decisions.

16. Despite these representations, Experian has failed to protect Plaintiff.

17. J&J has had numerous, long standing problems with Experian which includes Experian confusing J&J with other ServiceMaster franchises in Alabama.

- **2008 Incident**

18. This problem surfaced as early as July 24, 2008 when Experian placed negative credit information on an Intelliscore[1] supplied to Allstate Insurance. Specifically, Experian included negative credit information regarding Jimmy Crawford who Experian believed was a co-owner of J&J. Experian also included credit information for the unrelated entity, ServiceMaster Commercial Cleaning, in the same report.

---

[1] An Intelliscore is a numerical score derived and issued by Experian to a business as a credit score for the promptness of a business's payments to creditors.

3

19. J&J, through its attorney, informed Experian of these issues by letter dated July 24, 2008 and asked for the mistakes to be corrected. (Letter from Thomas Tankersley, Esq. to Experian Commercial Relations Dept. dated July 24, 2008, attached as Exhibit A).

20. Experian took no immediate action to correct these issues.

21. This prompted a second letter to Experian requesting action. (Letter from Thomas Tankersley, Esq. to Experian Commercial Relations Dept. dated August 13, 2008, attached as Exhibit B).

22. After further inactivity, a third letter was sent addressing the same issues. (Letter from Thomas Tankersley, Esq. to Experian Commercial Relations Dept. dated August 21, 2008, attached as Exhibit C).

23. Another letter was sent on August 25, 2008.  This letter reiterated that one of Plaintiff's "largest clients has indicated that they will refuse to do with business with J&J should the errors in your report not be corrected." (Letter from Thomas Tankersley, Esq. to Experian Commercial Relations Dept. dated August 25, 2008, attached as Exhibit D).

24. Numerous letters to Experian were written over the next several months which explained the continuing damage Plaintiff was experiencing.  None of these letters were responded to and the errors were not corrected.

25. Even into 2010 Experian included incorrect, negative credit information in its Intelliscore Plus and BPR report despite numerous attempts by Plaintiff to resolve the problem.

26. J&J, through its attorney, continued to inform Experian of these issues by letter dated August 3, 2010 and asked for the mistakes to be corrected. (Letter from Thomas Tankersley, Esq. to Experian Commercial Relations Dept. dated August 3, 2010, attached as Exhibit E).

27. Experian failed to respond to this letter or correct its errors.

4

28. Plaintiff mailed another letter to Experian on August 11, 2010. (Letter from Thomas Tankersley, Esq. to Experian Commercial Relations Dept. dated August 11, 2010, attached as Exhibit F).

29. On October 20, 2010, Experian, after nine letters, finally acknowledged receipt of Plaintiff's complaints and corrected the errors. (Letter from Experian Commercial Relations to Service Master Business Executive dated October 20, 2010, attached as Exhibit G).

- **2011 Incident**

30. In early 2011, Experian again included incorrect information on Plaintiffs Intelliscore Plus and BPR score.

31. This report included information regarding delinquent payments for telecommunications which were not the responsibility of Plaintiff or associated with Plaintiff.

32. Plaintiff informed Experian of the problem on February 15, 2011, again through letter, and even supplied evidence of who its actual telecommunications provider was and offered to show payment for those services for three years.  (Letter from Thomas Tankersley to Experian dated February 15, 2011, attached as Exhibit H).

- **February 2013 Incident**

33. Despite maintaining superb credit through timely payment of bills and invoices, Plaintiff learned of yet another error on its Experian report in February, 2013.

34. At that time, Plaintiff was informed by Alacrity that due to its credit score changes, as supplied by Experian, J&J's "stop light" status was changed to a "red status."  This meant he could no longer continue doing work for Alacrity.

35. Alacrity, at that time, was J&J's largest client and the only vendor Alacrity used in J&J's region.

5

36. J&J could not perform work for Alacrity until the issue was corrected.

37. In fact, J&J's score was dropped from a 47 to 5.

38. This score devastated Plaintiff's business.

39. The falling score was based on past due accounts to either an auto supplier or a warehouse supplier.

40. These were not Plaintiff's debts and were improperly placed on Plaintiff's reports.

41. In a letter dated February 5, 2013, Plaintiff informed Experian of the issue and the damage it was causing Plaintiff's business. The letter asked for an immediate response and correction. (Letter from Thomas Tankersley, Esq., to Experian, Commercial Relations, dated February 5, 2013, attached as Exhibit I).

42. On February 6, 2013, Mr. Averill was contacted by the field manager for Alacrity, Lewis Allen. Mr. Allen told Averill that his superiors questioned why another vendor in J&J's region was not added in J&J's region based upon J&J's "red light" status. The addition of another vendor would hurt J&J's reputation.

43. The addition of another vendor would decrease Plaintiff's business with Alacrity by 50%.

44. Experian's report, as well as previous reports, also affected Plaintiff's business with Allstate Insurance Company.

45. Experian's negligent reporting also harmed Plaintiff's reputation.

46. Again, Plaintiff embarked on a letter writing campaign attempting to get Experian to correct the problem.

47. Experian failed to respond to the letters.

48. J&J continued to lose business during this time and was forced to lay off employees during the second week of February.

• **September 2013 Incident**

49. Though the February issue was eventually resolved by Experian, Experian once again included incorrect information on Plaintiff's reports in September of 2013.

50. This resulted in Alacrity lowering J&J's baseline score to 20 which in turn placed J&J on "yellow light" status.

51. Plaintiffs informed Experian of this new reporting error on September 18, 2013. (Letter from Thomas Tankersley, Esq., to Experian, Commercial Relations Dept., dated September 18, 2013, attached as Exhibit J).

52. As per previous attempts to contact Experian, Experian did not respond to the September 26, 2013 letter nor was there a response to a subsequent letter sent on September 26, 2013.

53. The error was not corrected until the next month.

## FIRST CAUSE OF ACTION FOR VIOLATION OF FCRA

54. Plaintiff hereby repeats and re-alleges each and every allegation contained within Paragraphs 1 through 53, and incorporates the same by reference as though set forth in full herein.

55. Defendant Experian has consistently failed and refused to remove incorrect credit information from Plaintiff's credit reports.

56. Defendant failed to perform a reasonable investigation, to determine whether the credit information was accurate or incomplete and record the current status of the credit information, or delete it, in violation of 15 USC § 1681i(a).

57. Defendant Experian failed to maintain reasonable procedures designed to prevent the reappearance of incorrect, derogatory credit information on Plaintiff's reports, and allowed

7

derogatory information to reappear after it had been deleted, in violation of 15 USC § 1681i(a)(5)(B).

58. As a proximate result of the Defendant's violations of the FCRA as herein alleged, Plaintiff has been damaged in that Plaintiff has lost and continues to lose business based on Defendant's actions.

59. As a further proximate result of the Defendant's violation of the FCRA, as herein alleged, Plaintiff has incurred and will continue to incur attorney's fees and costs of suit.

60. Defendant's conduct was willful, deceitful, fraudulent, and reckless, entitling Plaintiff to punitive damages under the FCRA.

## SECOND CAUSE OF ACTION FOR NEGLIGENT, WANTON, AND INTENTIONAL CONDUCT

61. Plaintiff hereby repeats and re-alleges each and every allegation contained within Paragraphs 1 through 60, and incorporates the same by reference as though set forth in full herein.

62. Experian owes a duty to anyone they come in contact with to act reasonably so as to not unreasonably cause harm.

63. Experian assumed a duty to act reasonably towards Plaintiff and not to unreasonably cause Plaintiff harm.

64. Experian owes a duty to consumers of whom they collect information to act reasonably.

65. All of the actions described in this Complaint demonstrate that Experian did not act reasonably towards the Plaintiff.

66. Experian by its described conduct, breached their duty to act reasonably towards Plaintiff.

67. Experian proximately caused injuries and damages to Plaintiff.

68. Experian knew, or should have known, that its conduct was likely to lead to the Plaintiff's injuries yet they acted despite this knowledge.

69. Experian acted with full knowledge and with the design and intent to cause harm to Plaintiff.

70. Experian acted with negligence, malice, wantonness, recklessness, and/or intentional conduct in their dealings with and about Plaintiff as set forth in this Complaint.

71. Experian violated all of the duties Experian had and such violations were made intentionally, willfully, recklessly, maliciously, wantonly, and negligently.

72. It was foreseeable, and Experian did in fact foresee that the actions of Experian would lead and did lead to the exact type of harm suffered by Plaintiff.

73. Experian acted with negligence, malice, wantonness, recklessness, and/or intentional conduct in their dealings with and about Plaintiff as set forth in this Complaint.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

a) That service be made upon Defendant requiring it to answer or otherwise defend this Complaint or suffer judgment by default;

b) Upon hearing of the merits of this case, the Court order that Defendant be made to make the Plaintiff whole with the payment of compensatory and/or punitive damages as proven at trial;

c) This Court award proper attorney's fees;

d) Any other judgment that this Court finds is required.

Dated this 27th day of June, 2014.

ELIZABETH B. CARTER          ASB-3272-C38E

ROYAL C. DUMAS               ASB-1404-R60D
Attorneys for Plaintiff

9

OF COUNSEL:

HILL, HILL, CARTER, FRANCO,
  COLE, & BLACK, P.C.
P.O. Box 116
Montgomery, AL  36101-0116
334-834-7600
334-832-7419
ecarter@hillhillcarter.com
rdumas@hillhillcarter.com


PLEASE SERVE THE SUMMONS AND COMPLAINT AS FOLLOWS:

Experian Information Solutions, Inc.
c/o CT Corporation System
2 North Jackson Street
Suite 605
Montgomery, AL  36104